### TRIANGLE CAB COMPANY V. ALLEN C. TAYLOR.

No. A-703. Decided January 23, 1946.
Rehearing overruled February 20, 1946.
(192 S. W., 2d Series, 143.)

*Robert L. Holliday* and *Harold L. Sims,* both of El Paso for petitioner.

It was error for the trial court to send the blackboard into the jury room and in permitting it to remain there during the deliberations of the jury. It was also error for the Court of Civil Appeals not to so hold. England v. Pitts, 56 S. W. (2d) 493; Chapin v. Putman Supply Co., 124 Texas 247, 76 S. W. (2d) 469; Smith v. Young, 147 S. W. (2d) 859.

*Abner Lipscomb* and *Tom Files,* and *Kemp, Smith, Groggins & White,* all of El Paso, for respondent.

MR. JUSTICE SLATTON delivered the opinion of the Court.

Allen C. Taylor recovered a judgment for personal injuries and medical expenses against Triangle Cab Company. The El Paso Court of Civil Appeals affirmed the judgment of the trial court. (190 S. W. (2d) 755). Writ of error of the cab company was granted by this court.

Petitioner complains of the action of the trial court in failing to declare a mistrial because of the action of the trial court in permitting a blackboard to be sent to the jury room while the jury was deliberating on its verdict.

■ During the opening argument of Taylor's counsel to the jury, counsel stated to the jury that in his opinion, according to the evidence, they would be justified in answering special issues 1 to 16 inclusive "Yes." He went to a blackboard which was situated near the jury box in the court room, and with chalk wrote thereon in large words and figures "1-16 inc. Yes". When the jury was ready to retire and consider their verdict the bailiff approached the bench and the court handed him the exhibits and the charge. The bailiff then asked the court if the blackboard should go to the jury room and the court instructed him to take it into the jury room. After the bailiff conducted the jury to the jury room he returned to the court room and carried the blackboard into the jury room and placed it in full view of the jury, where it remained during the deliberations. Counsel for petitioner were present at the counsel table in the court room when the jury was retired and one of them was present in the court room when the blackboard was carried out. Counsel did not hear the conversation between the court and bailiff. Counsel did not observe the bailiff when the blackboard was carried out of the court room. Thereafter, one of counsel for petitioner noticed the absence of the blackboard in the court room and learned from the court that it had been sent to the jury room. Thereupon he moved the trial court to discharge the jury and declare a mistrial. The motion was overruled. Evidence was heard on the motion for a new trial. The trial court, after hearing the testimony of all members of the jury and the bailiff, made the following findings:

"Every member of the jury observed the bailiff bring the blackboard into the jury room and place it on the floor against one of the walls of the room. No member of the jury observed the writings or notations or markings on the blackboard at any time during its deliberations, and no member of the jury referred to the blackboard for any purpose during the deliberations, and no member of the jury refreshed his memory by observing any notations upon the blackboard."

The sending of the blackboard with the words and figures "1-16 inc. Yes" written thereon to the jury room while the jury was deliberating on its verdict was a violation of Rule 281. The source of the rule is former Article 2193, Vernon's Annotated Civil Statutes. The question of where the burden of proof rests in a situation like this is not presented, for the reason that both parties to this suit tendered some members of the jury as witnesses on the motion for a new trial and all of them testified. The trial court upon their testimony found as we have stated above. According to the finding of the trial court, which was

approved by the Court of Civil Appeals, no possible harm could have resulted from the error of the court in sending the blackboard to the jury room with the notations written thereon. West v. Houston Oil Company of Texas, 56 Texas Civ. App. 341, 120 S. W. 228, writ refused. We have carefully considered the evidence offered on the motion for new trial and conclude that the finding has support in the evidence. We do not have a case where the jury admitted overt acts of improper conduct during their deliberation, but testified that they did not consider such improper conduct in arriving at their verdict. Sproles Motor Freight Lines, Inc. v. Long, 140 Texas 494, 168 S. W. (2d) 642. It affirmatively appears in this case that no harm to the cab company resulted from this error.

■ Petitioner's second point involves the discussion of insurance by the jury during their deliberations on the verdict. The trial court found from the testimony heard on the motion for a new trial as follows:

"After all of the questions had been answered, the Foreman had signed the verdict, and requested the Bailiff to notify the Court that the jury was ready to report, substantially the following discussion about insurance was had: Some juror inquired as to whether the Defendant might have had insurance, to which another juror stated that he understood that all taxicabs were required to carry insurance. Another juror then remarked that if Defendant had insurance in the company represented by Bray, it would not do the Defendant any good. Then a juror stated it would not make any difference anyway for the Defendant would have to pay premiums if insurance was carried, and, if not, then it would likely have to pay the amount of the verdict, or the amount found against the Defendant. Then some other juror stated that premium rates would probably go up pretty high after the case was over.

"No discussion with reference to insurance was had prior to the signing of the verdict by the Foreman."

The petitioner earnestly insists that there is no basis for the finding of the lower court upon this matter. We therefore quote briefly from the evidence of each of the eleven jurors. (The case was tried with only eleven jurors).

"1. Either before or just after the first question was answered; all the discussion about insurance was right around the first question.

"2. Did not say when the discussion took place.

"3. I am a little hazy about that. I can't state definitely what time, it was sometime during the consideration of the case.

"4. To the best of my knowledge, just before we considered the last two questions.

"5. It was along about the latter part—I don't remember whether the questions had all been answered, or not, but it was long toward the end.

"6. Did not hear anything about insurance.

"7. I am under the impression that all the questions had been answered.

"8. Positive that it was after all questions had been answered.

"9. Positive that it was after all questions had been answered but would not be positive the verdict had been signed.

"10. Did not remember.

"11. Q. Was it made before the questions were answered, or afterwards?

"A. Well, if was . . . if I could say just for sure, only I believe it was anong toward the last, if it was not after."

The trial court could, under the evidence, decide that the discussion of insurance occurred either before or after the verdict had been determined by the jury. The finding of the trial court, which was approved by the appellate court, is conclusive on the Supreme Court. Price v. Biscoe et al, 141 Texas 159, 170 S. W. (2d) 729. The question remains whether the discussion of insurance by the jury after their verdict was completed but before the same was received by the trial court is an error which probably resulted in injury to the rights of petitioner. It has been held in many cases that improper conduct of the jury which occurred after the verdict was completed, but before the same was accepted by the trial court, is not reasonably calculated to affect the verdict, therefore not reversible error. Kaker v. Parrish, 187 S. W. 517, 521, writ refused; Helton v. Luse & Fosdick Drilling Co., 147 S. W. (2d) 831-2, and authorities there cited.

■ Petitioner complains of the action of the court in allowing the jury to consider the element of diminished earning capacity in the future as a part of the damages suffered by respondent. The Court of Civil Appeals iterated the evidence contained in the record with respect to this phase of the case. We are of the opinion that the evidence contained in the record authorized the

trial court to submit to the jury the element of probable loss on account of respondent's diminished earning capacity in the future. Amberson v. Woodul, 108 S. W. (2d) 852, loc. cit. 855; San Antonio & A. P. Ry. Co. v. Turney, 33 Texas Civ. App. 626, 78 S. W. 256, writ refused.

■ Petitioner complains of the refusal of the trial court to submit its specially requested special issue No. 1. The issue sought to inquire of the jury whether respondent failed to keep his motorcycle under proper control at or just prior to the collision. The court submitted to the jury the question of whether respondent failed to keep (a) proper lookout for other vehicles; (b) whether respondent operated his motorcycle at an excessive rate of speed; (c) whether resependent operated his motorcycle too near the rear of the taxicab; (d) whether respondent failed to turn his motorcycle to the left. We are of the opinion that under the rule announced in Blaugrund v. Gish, 179 S. W. (2d) 257, Supreme Court, 142 Texas 379, 384, 179 S. W. (2d) 266, loc. cit. 269, the contention of the petitioner must be overruled.

It follows from what we have said that the judgment of the lower courts should be affirmed.

Opinion delivered January 23, 1946.

Rehearing overruled Feb. 20, 1946.